(January 23, 1904.)

## CUNNINGHAM v. STONER.
### [79 Pac. 228.]

APPEAL—INSUFFICIENCY OF EVIDENCE—FINDINGS—JUDGMENT—CLAIM AND DELIVERY—DECEASED PERSON—CLAIM AGAINST—PLAINTIFF AS A WITNESS—DAMAGES—MEASURE OF.

1. Under the provisions of section 4807, Revised Statutes, unless an appeal is taken within sixty days after the entry of judgment, this court is precluded from reviewing the evidence to ascertain whether it is sufficient to support the findings or judgment.

2. In an action in claim and delivery the main issue is the right to the possession of the personal property in dispute.

3. As this is not an action prosecuted against an executor or administrator upon a claim or demand against the estate of a deceased person, the plaintiff is not precluded from testifying as a witness in his own behalf under the provisions of subdivision 3, section 5957, Revised Statutes.

4. The measure of damages in this case, if the respondent finally recovers the sheep and their increase, or their value, and the value of the wool shorn from the sheep, is that the appellant would be entitled, as an offset thereto, to the reasonable cost of shearing the sheep while they were in his possession and marketing the wool; but would not be entitled to the cost of keeping the sheep except from the date of the judgment of the court below until the termination of the retrial of the case after this decision.

(Syllabus by the court.)

APPEAL from District Court of Bingham County. Honorable James M. Stevens, Judge.

Action in claim and delivery to recover a band of sheep. Judgment for defendants. Reversed.

J. L. Rawlins, for Appellant.

There is no conflict of evidence in this case and the evidence, without contradiction, establishes the following facts: On January 29, 1896, plaintiff being the owner, by purchase, of a flock of three thousand ewes, one or two years old, leased them to James H. Day, until October 1, 1897, to be returned at that time, any losses to be made good out of the average of the lambs of said ewes. The lessee, or bailee, was also to pay for the use of said sheep, nine lambs on the one hundred, for each year, and one and one-half or two pounds of wool, per head. At the trial the following statement and admission were made: "Mr. Rawlins.—In the spring of 1899 the terms of the agreement between the plaintiff, James A. Cunningham, and James H. Day, deceased, as embodied in exhibit 'D' were modified by agreement of said parties to the extent that in lieu of the nine lambs and wool to be paid by James H. Day to the plaintiff for the use of said sheep for each year that said Day was to pay an annual cash rental for the use of said sheep in the sum of eighteen hundred dollars. Mr. Rogers.—We are prepared to accept counsel's statement of that fact as correct." Under the original lease as thus modified the sheep were held by Day until his death, about April 14, 1903, he paying the stipulated annual cash rental for their use, as hereinbefore stated. At the time the modified lease was made and went into effect the number of sheep to which the plaintiff was entitled was three thousand ewes, and at the rate of nine lambs on the one hundred for each of the years, 1896, 1897, 1898 and 1899. On October 1, 1897, the three thousand, plus lambs, five hundred and forty head, made the total to which plaintiff was entitled—three thousand five hundred and forty head of sheep. On October 1, 1898, plaintiff was entitled to three thousand five hundred and forty head, plus three hundred and nineteen, or the total of three thousand eight hundred and fifty-nine head. On October 1, 1899, plaintiff was entitled to three thousand eight hundred and fifty-nine head, plus three hundred and twenty-nine head, or the total of four thousand one hundred and eighty-eight head of sheep. Notwithstanding the foregoing were the facts, the court below, as a conclusion of fact and law, found that plain-

tiff was not the owner or entitled to the possession of the sheep, and that the same belonged to the estate of James H. Day and had been his property prior to his death. When and how did the sheep cease to be the property of the plaintiff and become the property of Day? Certainly, plaintiff was the owner of the flock of three thousand ewes. Day took these as bailee, agreeing to return the identical ewes, making good losses from the "average of the lambs of said ewes," and to pay for the use of said ewes at the rate of nine lambs per one hundred and one and one-half or two pounds of wool to the head each year. Some of the original ewes remained in the flock at the commencement of this action, and the rest of the flock consisted of their increase, except the bucks and the few Oregon sheep. "It is elementary that the owner of the dam, in the absence of any valid stipulation or arrangement to the contrary, owns her young from the moment of birth." (*Leavitt v. Jones,* 54 Vt. 423, 41 Am. Rep. 849, 851; *Arkansas Valley Land Co. v. Mann,* 130 U. S. 69, 78, 9 Sup. Ct. Rep. 458, 32 L. ed. 854, 2 Cyc. of Law & Pr. 309-311.) The following cases, almost completely analogous to the case at bar, establish plaintiff's right of recovery: *Turnbow v. Beckstead,* 25 Utah, 468, 71 Pac. 1062; *Woodward v. Edmunds,* 20 Utah, 118, 57 Pac. 848; *Robinson v. Haas,* 40 Cal. 475; *Bellows v. Denison,* 9 N. H. 293; and see *Solomon v. Franklin,* 7 Idaho, 316, 62 Pac. 1030. That the defendants Stoner and Post stand in no better position than Day is well established. The rule is stated succinctly in the following language: "Bailee cannot, in contravention of the purpose of bailment, sell, pledge, mortgage, exchange or give away the property or otherwise expressly or impliedly transfer it so as to give title even to one acting *bona fide,* and without notice of the bailee's status." (5 Cyc. of Law & Pr. 188; *Bache v. Clarke,* 13 L. R. A. 717, note.) The mortgages by Day to the Flato Commission Company did not come to the knowledge of the plaintiff until after Day's death. This act on the part of Day was inconsistent with the bailment, and the bailment was thereby terminated, giving plaintiff the right to the immediate possession of the sheep. (5 Cyc. of Law & Pr. 205, and authorities there cited.) The court erred in holding that plaintiff was

incompetent to testify to any fact occurring before the death of James H. Day. This ruling was based upon the third subdivision, section 5957, Revised Statutes. It will be noted that plaintiff in this case was not a party or the assignor of a party in an action against an administrator, upon any claim or demand against an estate. The action by plaintiff was against the defendants, Stoner and Post, and was based solely upon a claim or demand made against these defendants. In respect to this claim the administrator of the estate of James H. Day was not a necessary party. Upon the issue thus presented no judgment could be rendered against the estate, or to charge a trust upon any property belonging to the estate. The admission in evidence of the declaration of Day, in the absence of the plaintiff, that he, Day, was the owner of the sheep, was manifest error. The declarations were made in Salt Lake City while the sheep were in Idaho or Wyoming. They did not accompany or tend to characterize any act of Day pertaining to the possession of the sheep. They constituted no part of the *res gestae*. They were not made in disparagement of Day's title or against his interest. They were self-serving declarations and clearly incompetent. (Starkie on Evidence, 65; 1 Rice on Evidence, 420, 421; Stephen's Digest, Evidence, art. 28; 1 Greenleaf on Evidence, 16th ed., secs. 110, 149, 152.) The ruling of the court excluding evidence on the part of the plaintiff of the expense incurred by him in caring for the sheep, and in respect to the wool, and in finding against plaintiff for the gross amount received for the wool cannot be sustained. If the sheep had remained in the possession of the defendants, these expenses would have devolved upon them. At least, plaintiff's claim to the possession of the sheep was in good faith, and defendants could recover nothing more than the value of the use of the sheep while they were in the possession of the plaintiff. Under this ruling plaintiff was clearly entitled to credit for the expense of keeping the sheep and of shearing and marketing the wool. (5 Wait's Actions and Defenses, 499; *Allen v. Fox*, 51 N. Y. 567, 10 Am. Rep. 641; *Yandle v. Kingsbury*, 17 Kan. 195, 22 Am. Rep. 282.)

F. S. Dietrich and L. R. Rogers, for Respondents.

The judgment appealed from was rendered October 30, 1903. The appeal was taken April 12, 1904, and was from the judgment alone.  More than sixty days had elapsed from the rendering of the judgment before the appeal therefrom was taken. Therefore this court cannot review the evidence or the exceptions that the evidence does not support the findings.  (Rev. Stats., sec. 4807, subd. 1; *Brady v. Linehan*, 5 Idaho, 732, 51 Pac. 761.)  The above section of the Revised Statutes was borrowed from the Code of Civil Procedure of California (see Deering's Code, sec. 939), and has uniformly been construed by the supreme court of that state exactly as this court has construed the statute to mean.  (*Curran v. Kennedy*, 89 Cal. 98, 26 Pac. 641; *Handley v. Figg*, 58 Cal. 578; *Bettis v. Townsend*, 61 Cal. 333; *Dominguez v. Mascotti*, 74 Cal. 269, 15 Pac. 773; *Greenwood v. Adams*, 80 Cal. 74, 21 Pac. 1134.)  It is almost the universal doctrine in the code states, where the distinction between law and equity has been abolished, that an appellate court, even when the appeal is taken in time and the evidence is properly within the record, will not disturb the findings of the trial court where there is a substantial conflict in the evidence.  Such is the Idaho doctrine.  (See *Simons v. Daly*, 9 Idaho, 87, 72 Pac. 507; *Stuart v. Hauser*, 9 Idaho, 53, 72 Pac. 719; also *Robson v. Colson*, 9 Idaho, 215, 72 Pac. 951.)  There is no dispute that Cunningham and Day entered into a lease in January, 1896, and that Day received from Cunningham three thousand ewe sheep thereunder.  But we contend that the lease expired or was supplanted by an agreement by which Day became simply the debtor of Cunningham.  By the plain provisions of this lease appellant remained at all times, so long as they were alive, the true owner of the ewes, but was not the owner of their increase; but Day became the owner of the increase and was obligated by the lease to "pay to the first party (Cunningham) for the use and rent of said ewes, nine lambs for each one hundred head of said ewes."  The law is well settled that the increase of the female of livestock belongs to the owner of the dam at the time. The only exception to this rule is where the dam may be hired temporarily for a term.  The increase during the term belongs

to the usufructuary. (Cobbey on Replevin, sec. 398; Kent's Commentaries, 360; Edwards on Bailments, secs. 369, 403; *Williamson v. Daniel,* 12 Wheat. (U. S.) 568, 6 L. ed. 731 (slave mother and child); *Putnam v. Wyley,* 8 Johns. 432, 5 Am. Dec. 346; *Concklin v. Haven,* 12 Johns. 314; *Maize v. Bowman,* 93 Ky. 205, 19 S. W. 589, 17 L. R. A. 81; *White v. Storms,* 21 Mo. App. 288; *Stewart v. Ball,* 33 Mo. 154; *Hazelbaker v. Goodfellow,* 64 Ill. 238.) James H. Day had possession of all these sheep, some of which, it is admitted, he absolutely owned. He extended mortgages covering the entire band to the Flato Commission Company. This company was interested as a mortgagee. For his own benefit, and for the benefit of the mortgagee, he requested the Flato Commission Company to take care of the sheep and furnish the necessary means to do so. While the commission company was so caring for the sheep Day died, and the commission company sold its mortgages and assigned its interest to the respondents Stoner and Post. While the respondents Stoner and Post were caring for the sheep, in a sense as the agents of the owner, that is, protecting the property of the estate and preserving their security until they could enforce their claim against it by due process of law, and before an administrator could be appointed, appellant brings this action against the respondent Stoner and Post, knowing that they did not claim to be the owners of the sheep. The administrator, therefore, was not only a proper party, but a necessary party to the action. (Cobbey on Replevin, sec. 1168; *McFadden v. Fritz,* 110 Ind. 1, 10 N. E. 120; *Butler v. Rockwell,* 14 Colo. 125, 23 Pac. 462; *Stuckey v. Bellah,* 41 Ala. 700; Wharton on Evidence, secs. 466-468; *Feller v. Feller,* 40 Or. 73, 66 Pac. 468; *Yick Kee v. Dunbar,* 20 Or. 416, 26 Pac. 275; *Joshua Hendy Machine Works v. Dillon,* 135 Cal. 9, 66 Pac. 960; 18 Ency. of Pl. & Pr. 510.)

SULLIVAN, C. J.—The complaint in this action contains the usual averments of an action in claim and delivery. The action was brought against respondents Stoner and Post to recover the possession of three thousand five hundred head of sheep, which sheep had formerly been in the possession of one

James H. Day, now deceased.  Subsequently, at the request of said respondents, the court ordered that the respondent, D. W. Jones, as administrator of the estate of said Day, be made a party.  Said Jones, as administrator, answered the complaint and denied that the appellant was the owner or entitled to the possession of said sheep and averred that said sheep belonged to the estate of his intestate Day.  The action was tried by the court without a jury and judgment was entered in favor of the respondents, and based on the ground that said sheep belonged to the estate of said Day and that said appellant was not entitled to the possession thereof.  The judgment was entered on the 30th of October, 1903, and the appeal was taken on twelfth day of April, 1904.  The record shows, among other things, the following facts: That the appellant was the owner of a band of sheep consisting of about three thousand head of ewes; and on the twenty-ninth day of January, 1896, he entered into a contract with said deceased Day whereby he leased said sheep to Day until October 1, 1897, on certain terms and conditions which it is not necessary to set forth further than that the lessee or bailee was to return said sheep to the appellant and make good out of the average of the lambs of said ewes the losses of said sheep.  That the lessee was also to pay for the use of said sheep nine lambs on the hundred each year and one and one-half pounds of wool per sheep.  That on October 1, 1897, said Day had in this flock of sheep three thousand one hundred head composed of said ewes and their lambs; that after October 1, 1897, Day continued to hold the sheep on the terms of said lease, recognizing the appellant as the owner of the sheep.  In the years 1897, 1898, 1899 and 1901, he paid the money received for the wool rental to appellant by check.  In October, 1899, Day had about three thousand six hundred head of sheep carried over from the previous year and about two thousand lambs.

During the trial it was admitted that in the spring of 1899 the terms of said agreement between appellant and said Day, deceased, as embodied in said contract, were modified by the agreement of said parties to the extent that in lieu of the nine lambs per hundred ewes, and wool to be paid by James H. Day to the appellant for the use of said sheep for each year, said

Day was to pay an annual cash rental of $1,800 for the use of said sheep. It is contended by counsel for appellant that said sheep were held under the original lease as modified by said Day until his death on April 14, 1903. It appears that in September, 1901, the said Day had about five thousand head of said sheep and their increase; it also appears that in June, 1901, Day bought about four thousand one hundred head of Oregon yearling ewes; that these had no lambs in 1901, and that a few of them had lambs in 1902, and that there were heavy losses among said Oregon sheep during the winter of 1901-02. In September, 1902, three thousand one hundred head of said Oregon sheep were sold to one Nebekar. After the sale of said Oregon sheep there remained about six thousand three hundred head of sheep, a few of which were Oregon sheep. It appears that on October 20, 1902, and again on January 24, and February 23, 1903, the said Day executed mortgages upon certain sheep, therein described, to the Flato Commission Company; that on April 14, 1903, said Day died and the Flato Commission Company, by its agent, took possession of said sheep. Soon after that, the commission company sold the mortgages and the indebtedness secured thereby to the respondents Stoner and Post for the sum of $9,000. On May 1, 1903, the sheep were taken possession of by the respondents Stoner and Post, and the flock at that time consisted of four thousand three hundred and ninety-two head, including eighty-three bucks and two hundred and seventeen Oregon ewes. That was the number of sheep at the commencement of this action.

The sheriff, under the writ issued in this suit, took possession of said sheep after notice to the respondents. After holding the sheep five days, the sheriff turned them over to the appellant, who held possession until the trial of this action. While the sheep were thus held they were shorn of their wool, which was sold by the appellant for the sum of $2,497.18. The court entered judgment in favor of the respondents for the return of the sheep, or their value, and for $2,497.18, the value of the wool shorn from the sheep and costs.

A number of errors are assigned and are discussed under six heads by counsel for appellant in his brief. Under the first

head he discusses the insufficiency of the evidence to support the findings. As the appeal is from the judgment only and was taken more than sixty days after the entry of the judgment, this court is precluded by the provisions of section 4807, Revised Statutes, from reviewing the evidence to ascertain whether it is sufficient to support the findings of fact. (See, also, *Brady v. Linehan,* 5 Idaho, 732, 51 Pac. 761; *Moe v. Harger, ante,* p. 194, 77 Pac. 645.) We can, therefore, only examine the assigned errors of law on this appeal, and cannot examine the evidence to ascertain whether it is sufficient to support the findings and judgment.

Under the second head is discussed assignments of error 1, 7, 8 and 12, which refer to the action of the court in not permitting the appellant to testify to any matter of fact occurring before the death of said Day. The ruling of the court in that matter was based upon the provisions of subdivision 3, section 5957 of the Revised Statutes, which subdivision is as follows and provides that the following persons cannot be witnesses, to wit: "Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or an administrator, upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person." It will be observed that this is an action in claim and delivery and involves the right to the possession of a band of sheep and was commenced by the appellant against the respondents Stoner and Post, and is based solely on a claim or demand against them. The question of the right to the possession of said sheep was the main point in issue, and not the ownership of said sheep, although the appellant alleges that he is the owner.

In an action of claim and delivery, the right to the possession of the property is the main issue. And while counsel for appellant excepted to the order of the court making the administrator of Day a party defendant, he has not discussed that exception in his brief. As I take it, said administrator may have been a proper party to this action, but I do not think he was a necessary party. The appellant in this action makes no

claim against the estate of Day, and while the respondents Stoner and Post allege that they are the assignees of a claim against the estate of James H. Day secured by mortgage upon the property sought to be recovered, they do not seek any relief against the estate on that account in this proceeding. That being true, this is not an action or proceeding against the executor or administrator upon a claim or demand against the estate of a deceased person, and for that reason the appellant is not disqualified as a witness because of the provisions of said section above quoted. The court erred in refusing to permit the appellant to testify in this case.

The admission in evidence of the declaration of Day made in the absence of the plaintiff to the witness Houtz, to the effect that he was the owner of said sheep, and the affidavits of said Day attached to the mortgages introduced in evidence in which he declares that he is the owner of the sheep, is assigned as error. It is contended that those declarations were self-serving and no part of the *res gestae,* and that they did not accompany or tend to characterize any act of Day pertaining to the possession of the sheep and were made in Salt Lake City, state of Utah, while the sheep were in Idaho or Wyoming. While, on the other hand, counsel for respondent contend that Day's possession of said sheep was *prima facie* evidence of his ownership and that said declarations are a part of the *res gestae.*

The general rule in regard to a party's declarations is that such declarations are competent evidence against him or his representatives and cannot be adduced by or in favor of either. To that general rule there appears to be an exception which is that when declarations, qualifying and giving character to an act proper to be given in evidence, accompany that act, they are admissible, whether self-serving or not, because they are a part of the *res gestae.* (*McConnell v. Hannah,* 96 Ind. 102.) We have many decisions that recognize that exception. In *Reiley v. Haynes,* 38 Kan. 259, 5 Am. St. Rep. 737, 16 Pac. 440, it was held that declarations by a party to the action in possession of personal property, as to her ownership thereof, accompanying some principal fact which they serve to explain and qualify are sometimes said to be a part of the *res gestae;* but

as the admissibility of such declarations is an exception to the general rule, that the declarations of a party are not competent evidence in his own behalf, they should be allowed only with all the limitations and restrictions imposed upon them.

In *Fellows' Admr. v. Smith,* 130 Mass. 378, it was held in an action by an administrator against a widow of his intestate for the conversion of certain personal property, declarations of the intestate that the property was not his are admissible for the defendant, and the statements of the intestate that the property was his are inadmissible for the plaintiff. The rule laid down in that case appears to us to be the correct rule unless, at least, it clearly appears that such declarations are a part of the *res gestae* and not made for self-serving purposes. We think, under the facts of this case, the court did not err in admitting such declaration.

It appears that while the appellant was in the possession of the said sheep after they were delivered to him by the sheriff, he kept them for some time and during that time they were shorn and the wool sold for the sum of $2,497.18. And the appellant sought to show the expense of keeping the sheep while they were in his possession as an offset to the claim for damages, and the court refused to permit him to do so. This action of the court is assigned as error.

It is contended by counsel for appellant that the possession of the sheep was taken in good faith and that respondents could not recover more than the value of the use of the sheep while they were in the possession of appellant, and that appellant is entitled to credit for the reasonable cost of keeping the sheep and shearing them and marketing the wool as an offset against the value of the wool, and cites 5 Wait's Actions and Defenses, 499, *Allen v. Fox,* 51 N. Y. 567, 10 Am. Rep. 641, and *Yandle v. Kingsbury,* 17 Kan. 195, 22 Am. Rep. 282. In the first cited authority it is held that "In an action of replevin where the property has a usable value, the value of such use during the time of its wrongful detention should be given," and "In the absence of malice or aggravating circumstances, the plaintiff is entitled to no more than the use of the property would have been worth to him during the period he was deprived of

its use by the plaintiff." (See *Barney v. Douglass*, 22 Wis. 464.) In the case of *Allen v. Fox*, the question of the proper measure of damages in cases of replevin is discussed at considerable length. The court in that case said in such cases if the owner recovered the interest on the value of the property from the time he was deprived of it, he will generally have a complete indemnity unless the property has depreciated in value, in which case the depreciation must be added to the interest on the value taken as it was before the depreciation, and the two items will furnish the amount of damages. In the case of *Yandle v. Kingsbury, supra,* the court held that in an action of replevin where the property in controversy has a usable value, the value of the use of such property during the time of its wrongful detention may be recovered as proper damages.

In an action in replevin where the property sought to be recovered has a usable value and that value amounts to more than interest on the value of the property, a court would be justified in assessing damages for the amount of the usable value of the property and that would be the proper measure of damages, and not interest on the value of the property. And I think under the facts as shown by the transcript, if the respondents finally recover the sheep and their increase, or their value, with the value of the wool shorn from the sheep, the appellant would be entitled, as an offset thereto, to the reasonable cost of shearing the sheep while they were in his possession, and marketing the wool, but would not be entitled to the cost of keeping the sheep from the time he took possession of them to October, 30, 1903, the date of the judgment of the court below; but would be entitled, as an offset, against any damages recovered by the respondents, to the reasonable value of the cost of keeping said sheep, if he has kept them since that date until the termination of this case by the trial court after this decision, as it would be unjust for the appellant to bear the expense of keeping the sheep while correcting the errors of the trial court.

The judgment is reversed and the cause remanded, with instructions to grant a new trial. Costs of this appeal are awarded to the appellant.

Stockslager, J., and Ailshie, J., concur.

### ON REHEARING.
#### (January 25, 1905.)

AILSHIE, J.—After a rehearing in this case we have discussed and considered the entire record anew and have decided that the conclusion reached by us upon the former hearing is correct. The principal contention made by respondents on the rehearing is directed against that part of the original opinion wherein it is held that the appellant was not, by reason of the provisions of subdivision 3 of section 5957, Revised Statutes, disqualified from testifying concerning matters occurring prior to the death of Day. · Counsel argue that since the court holds that Day's administrator was properly brought into the case as a defendant, the result of the litigation must be the same as if the action had been originally brought against the administrator, and that the same rule as to the admission of the evidence of plaintiff would apply in either case. I think counsel correct in this contention and after what examination I have been able to make on the subject, I am inclined to the belief that such an action as this against an administrator is not a "claim or demand" against an estate within the meaning of subdivision 3 of section 5957. Where plaintiff claims ownership and right of possession and the administrator denies the allegation of the complaint and claims the property as that of the estate represented by him, the issue of the case is that of ownership, and the application of subdivision 3, section 5957, would amount to trying the right of property between the two litigants with the court presuming all the while during the course of the trial that the property belongs to the defendant. Such a trial would seem extraordinary. In a case like this the plaintiff is claiming nothing from the estate; he is only pursuing his own property, or what he claims to be his own. The California court appears to have uniformly placed this construction upon their statute which is identical with ours. (*Paulson v. Stanley,* 122 Cal. 655, 68 Am. St. Rep. 73, 55 Pac. 605.)

It is contended by respondents that *Rice v. Rigley,* 7 Idaho, 115, 61 Pac. 290, is in conflict with this position. The members of the court are not agreed as to the reasons for the conclusion

at which we have arrived, nor are they agreed as to the distinction, if any, to be drawn between this and the Rice-Rigley case. Of course it will be noticed that this case belongs to a different class of actions and looks solely to the title and right of possession of personal property. For the reasons just stated I shall not enter upon any further discussion as to my views in the case.

The judgment of the lower court is reversed and the cause remanded, with instructions to grant a new trial. Costs awarded to appellant.

Stockslager, C. J., and Sullivan, J., concur.